**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**AT PADUCAH**

**JUDY A. NEUHAUSEL**
    Plaintiff

v.   No. 5:04CV-131-J

**JO ANNE B. BARNHART**
    Commissioner of Social Security
    Defendant

**MAGISTRATE JUDGE'S REPORT**
**and RECOMMENDATION**

This matter is before the court upon the plaintiff's complaint seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). The plaintiff is represented by Robert Francis. The fact and law summaries of the plaintiff and the defendant are at Docket Entry Nos. 10 and 11, respectively. This matter has been referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636.

The final decision of the Commissioner was rendered on January 20, 2004, by administrative law judge (ALJ) James Craig. In support of his decision denying Title II benefits, Judge Craig entered the following numbered findings:

1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision.

2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3. The claimant is status-post two lumbar surgeries, with residual degenerative changes, causing some pain and limitation, an impairment considered "severe" based on the requirements in the Regulations 20 CFR § 404.1520(c). The claimant does not have a medically determinable mental impairment.

4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5. The undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

6. The claimant has the residual functional capacity to perform a range of light work. The claimant can lift and carry a maximum of 20 pounds occasionally and 10 pounds frequently. The claimant can push/pull within these weights, but not on a repetitive basis with the upper and lower extremities. The claimant can sit, stand and/or walk, about six hours each, as needed in an eight-hour workday, with normal rest and meal breaks about every two hours. The claimant can only occasionally stoop and crouch and she can never kneel or crawl. The claimant should avoid exposure to vibration, moving/mechanical parts, electrical shock and exposed heights. The claimant cannot make complex decisions. Aside from these restrictions, the claimant has no other significant limitations in the performance of light work activity.

7. The claimant is unable to perform any of her past relevant work (20 CFR § 404.1565).

8. On the alleged onset date, the claimant was a "younger individual," and she is currently an individual "approaching advanced age." (20 CFR § 404.1563).

9. The claimant has "more than a high school (or high school equivalent) education," which does not provide for direct entry into skilled jobs within her residual functional capacity (20 CFR § 404.1564).

10. The claimant has no transferable skills to her residual functional capacity (20 CFR § 404.1568).

11. The claimant has the residual functional capacity to perform a significant range of light work (20 CFR § 404.1567).

12. Although the claimant's non-exertional limitations do not allow her to perform the full range of light work, using Medical-Vocational Rules 202.21, 202.14 and Social Security Rulings 85-16 and 85-16 *(sic.)* as a framework for decision-making, there are a significant number of jobs in the national economy that she could perform. Examples of such light jobs include cashier II, 1.4 million jobs in the United States; laundry worker (folder), 20,000 jobs in the United States; office helper, 200,000 jobs in the United States.

13. The claimant is not "disabled" as defined in the Social Security Act, at any time through the date of this decision (20 CFR § 404.1520(f)).

## Governing Legal Standards

1. The court has jurisdiction to examine the record that was before the Commissioner on the date of the Commissioner's final decision and to enter a judgment affirming, modifying, or reversing that decision. 42 U.S.C. § 405(g), sentence four. In exercising its "sentence four" jurisdiction, the court is limited to determining whether the Commissioner's controlling findings are supported by substantial evidence and whether the Commissioner employed the proper legal standards in reaching her decision. *Richardson v. Perales*, 402 U.S. 389 (1971). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Kirk v. Secretary of Health and Human Services*, 667 F.2d 524 (6th Cir., 1981). It has been described as a sufficient amount of evidence "to justify, if the trial were to a jury, a refusal to direct a verdict." *Sias v. Secretary*, 861 F.2d 475, 480 n. 1 (6th Cir., 1988). In determining whether the Commissioner's findings are supported by substantial evidence, the court must examine the evidence in the record taken as a whole and must take into account whatever in the record fairly detracts from its weight. *Wyatt v. Secretary*, 974 F.2d 680 (6th Cir., 1992). However:

> The substantial-evidence standard allows considerable latitude to administration decision makers. It presupposes that there is a zone of choice within which the decision makers can go either way, without interferences by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.

*Mullen v. Secretary*, 800 F.2d 535, 545 (6th Cir., 1986).

When conducting substantial evidence review, the court is restricted to a consideration of the evidence that was before the Commissioner on the date of the final decision. When the Appeals Council declines to review the ALJ's decision and render a new decision, the ALJ's decision becomes the Commissioner's final decision. *Cotton v. Secretary*, 2 F.3d 692 (6th Cir., 1993).

2. To be entitled to disability insurance benefits (DIB), a claimant must be under the age of 65 years, must meet the insured status requirements of Title II of the Social Security Act, and must be under a disability as defined by the Act.

3. Disability determination is a five-step sequential evaluation process, to-wit:

**STEP #1** The claimant must not be engaged in substantial gainful activity.

**STEP #2** The alleged disabling impairment must be "severe." A "severe" impairment is one that "significantly limits" a claimant's ability to do "basic work activities" that are "necessary to do most jobs" such as walking, standing, sitting, lifting, seeing, hearing, and speaking. 20 C.F.R. § 404.1521. Only a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and work experience" is "nonsevere." *Farris v. Secretary*, 773 F.2d 85, 89-90 (6th Cir., 1985). Any physical or mental impairment that has more than a <u>de minimis</u>, or significant, effect on the claimant's ability to work is "severe," and the sequential evaluation should proceed to Step #3.

**STEP #3** If the claimant has a medical condition that meets or exceeds the criteria for an impairment defined in Appendix 1 of 20 C.F.R. Part 404, Subpart P of the regulations ("the Listing"), a conclusive presumption attaches that the claimant is disabled.

4

**STEP #4** The claimant must not be able to perform his past relevant work.

**STEP #5** If the claimant makes a prima facie showing that he cannot perform his past relevant work, the burden of going forward with evidence shifts to the Commissioner to show that a significant number of jobs exist in the national economy that the claimant can perform. *Born v. Secretary*, 923 F.2d 1168 (6th Cir., 1990). If the evidence supports a finding that the claimant's age, education, work experience, and residual functional capacity (used to determine the claimant's maximum sustained work capability for sedentary, light, medium, heavy or very heavy work as defined by 20 C.F.R. §§ 404.1567 and 416.967) coincide with all the criteria of a particular rule of Appendix 2 of Subpart P, the Commissioner must decide whether the claimant is disabled in accordance with that rule. Section 200.00(a) of Appendix 2; 20 C.F.R. §§ 404.1569a(b) and 416.969a(b).

If the claimant is found to have, in addition to the exertional impairments resulting in his maximum residual strength capabilities, nonexertional limitations, e.g., mental, sensory, or skin impairments, postural or manipulative limitations, and environmental restrictions; the Commissioner may rely on the particular rule only as a "framework for decisionmaking." Section 200.00(e)(1) and (2) of Appendix 2; 20 C.F.R. §§ 404.1569a(d) and 416.969a(d); *Kimbrough v. Secretary*, 801 F.2d 794 (6th Cir., 1986). Accordingly, the focus of judicial review in Step #5 cases is typically whether the controlling hypothetical posed to the vocational expert reflected all vocationally significant physical and mental limitations actually suffered by the claimant. *Varley v. Secretary*, 820 F.2d 777 (6th Cir., 1987).

**Discussion**

The plaintiff's first numbered contention is that "the administrative law judge failed to properly determine Ms. Neuhausel's residual functional capacity [RFC]" (Docket Entry No. 10, p. 4). The regulations provide that "although we consider opinions from medical sources on issues such as . . . your [RFC], the final responsibility for deciding these issues is reserved to the Commissioner." 20 C.F.R. § 404.1527(e)(2). An RFC assessment given by a medical source is entitled to no "special significance." 20 C.F.R. § 404.1527(e)(3).

In this case, no treating or examining physician offered an opinion with respect to the plaintiff's permanent limitations or maximum exertional capacity or otherwise provided a detailed opinion of what the plaintiff can still do despite her impairments. The ALJ found that "there are no treating source assessments for the undersigned to consider" (AR, p. 17). However, there are nonexamining source opinions of record. On June 17, 2002, program physician Margaret Stubbs found that the plaintiff retains an ability to perform a limited range of "medium" as contemplated by 20 C.F.R. § 404.1567(c), i.e., lifting of no more than 50 pounds at a time, etc. (Exhibit 4F, AR, pp. 163-170). The ALJ expressly rejected Exhibit 4F, finding that, in light of the plaintiff's two lumbar surgeries, "it is more medically reasonable [that] the claimant should not lift 50 pounds, even on an occasional basis" (AR, p. 17). On September 25, 2002, program physician J. Howell provided an "RFC assessment for 12 months after 9/4/2002" (AR, p. 225). The significance of September 4, 2002, is that this was the date of the plaintiff's second back surgery. Dr. Howell found that after the plaintiff reaches maximum medical improvement following her second surgery, the plaintiff should be able to perform some "light" work, i.e., lifting no more than

20 pounds, with only occasional stair climbing, crouching, crawling, etc. (AR, pp. 225-232). The ALJ's RFC Finding No. 6 is somewhat more restrictive than Dr. Howell's findings. The ALJ found that the plaintiff cannot push/pull on a repetitive basis with the upper and lower extremities, can only occasionally stoop and crouch, can never kneel or crawl, and must avoid certain environmental limitations.

The plaintiff argues that the ALJ's RFC Finding No. 6 lacks support because "no physician or medical expert of the defendant's evaluated the results of the MRI" following her second surgery and dated October 25, 2003 (Docket Entry No. 10, p. 5). The MRI report is at AR, p. 246. The argument apparently is that the ALJ implicitly found that Finding No. 6 is consistent with the raw medical data contained in the MRI report, and the ALJ was unqualified to so find.

The magistrate judge finds the argument to be unpersuasive for at least three reasons. First, the plaintiff has failed to identify any specific medical finding in the MRI report which would preclude the limitations noted in Finding No. 6. In his decision, the ALJ correctly observed that, in light of the MRI results, the plaintiff's treating physician, Dr. Allen, opined no specific limitations (AR, p. 17). Dr. Allen found as follows: "MRI scan, postoperative changes, degenerative changes, but not anything else. We will treat with epidurals" (AR, p. 242). Second, the determination of a claimant's RFC is not a purely medical determination. It involves a consideration of "all the relevant evidence in your case record" and "limitations that result from your symptoms, such as pain." 20 C.F.R. § 404.1545(1) and (3). Third, it is always the claimant's responsibility, not the ALJ's, to submit evidence that proves she is disabled. The magistrate judge concludes that the plaintiff has failed to show that the ALJ's RFC finding constituted an abuse of discretion or was otherwise unsupported by substantial evidence.

Next, the plaintiff argues that Rule 201.14 of Appendix 2 of 20 C.F.R. Part 404, Subpart P (the medical-vocational guidelines, or grids) applies and directs an ultimate conclusion of disability. The argument is without merit because Grid Rule 201.14 applies to individual's with a maximum exertional capacity for "sedentary" work. We have already concluded that the ALJ did not err finding that the plaintiff can perform a significant range of "light" work. In addition, where there is vocational testimony tailored to a claimant's specific exertional and nonexertional limitations, as in the present case, the grid rules, which contemplate only exertional restrictions, are applicable only as a framework for decisionmaking, and the vocational testimony governs. See discussion of Step No. 5 of the sequential evaluation process, supra. Accordingly, the ALJ correctly cited the Grid Rules 202.21 and 202.14 as a "framework for decision-making." Finding No. 12.

The plaintiff's second and final numbered contention is that "the administrative decision was based upon incorrect vocational evidence" (Docket Entry No. 10, p. 6). The vocational expert (VE) testified that an individual with the limitations stated in ALJ's Finding No. 6, including "no repetitive pushing or pulling from the upper or lower extremities," can perform the "light" jobs of cashier, laundry worker / folder, and office helper identified in Finding No. 12 (AR, p. 295). Pursuant to the requirement of Social Security Ruling (SSR) 00-4p, at the hearing, the ALJ inquired and the VE testified that the VE's testimony was not in conflict with information contained in the Dictionary of Occupational Titles (DOT) (AR, p. 297).

The plaintiff argues that, in fact, the hypothetical would preclude the identified jobs as described in the DOT and its companion publication, the Specific Occupational Selector Manual (SCO). The plaintiff has submitted portions of the SCO which indicate that the jobs in question require frequent reaching and handling.

8

In her fact and law summary, the plaintiff correctly identifies the assumption that is critical to her argument as follows: "If the individual has limitations on repetitive pushing and pulling, then that would result in restrictions on the use of the upper extremities in regards to reaching and handling" (Docket Entry No. 10, pp. 7-8). The magistrate judge finds the plaintiff's argument to be unpersuasive because she has failed to prove this critical assumption. In addition, the regulations tend to undermine the assumption. An inability to push and pull is considered an exertional limitation. 20 C.F.R. § 404.1569a(b) ("exertional limitations"). In contrast, an inability to reach and handle is considered a nonexertional limitation. 20 C.F.R. § 404.1569a(c)(vi). The plaintiff failed to provide the court with probative evidence that she cannot perform the nonexertional manipulative requirements of the jobs in question due to the presence of an exertional limitation.

## RECOMMENDATION

The magistrate judge RECOMMENDS that the final decision of the Commissioner be AFFIRMED and that the plaintiff's complaint be DISMISSED.

## NOTICE

Pursuant to 28 U.S.C. § 636 and Fed.R.Civ.P. 6(e), the parties shall have thirteen (13) days from the date of notice of electronic filing to file written objections to the foregoing report with the Clerk of Court. The court shall not conduct a <u>de novo</u> review of objections that are general, conclusory, or merely adopt previous pleadings. A party may file a response to another party's objections within ten (10) days after being served a copy thereof. Fed.R.Civ.P. 72(b). A copy of the objections shall be served on the undersigned at Suite 330, 501 Broadway, Paducah, Kentucky, 42001. Failure of a party to file timely objections shall constitute a waiver of the right to appeal by that party. *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).